IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

LOUCIE LEE STUBBS                                                                                      PLAINTIFF

V.                                                                          CIVIL ACTION NO. 1:06CV151-B-D

LEGGETT & PLATT COMPONENTS
COMPANY, INC., D/B/A TUPELO FIBER                                                     DEFENDANT

**MEMORANDUM OPINION**

This cause comes before the court upon the defendant's motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Loucie Lee Stubbs, filed this action on May 16, 2006, asserting that he was terminated from his employment with the defendant because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17, and 42 U.S.C. § 1981.  The plaintiff worked for a division of Leggett & Platt Components Company known as Tupelo Fiber from 1992 until his termination.  Tupelo Fiber manufactures various fabrics at its Tupelo, Mississippi, plant for use in the furniture industry.  The plaintiff was employed as a second shift supervisor at the time of his suspension and ultimate termination.

Some of the machines used by Tupelo Fiber to manufacture fabrics pose a deadly risk, requiring that proper safety procedures be followed.  The company's employee handbook emphasizes an employee's need to follow safety procedures.  The handbook requires that a machine must be properly "locked out" before one places one's hands or fingers in it.  In August 2004, the company established a more strict lock out policy and informed its employees that

termination was mandatory for violations of its new zero tolerance stance. The new policy requires that a padlock be placed on the shut-off controls while one services the machinery. The purpose of the policy is to prevent injuries caused by a person unexpectedly turning the machine back on or by the machine automatically restarting. Employees who work on the machines carry padlocks with them for the purpose of locking the machines. The plaintiff was assigned two padlocks.

On August 10, 2004, the plaintiff executed a document entitled "Supervisor's Lock Out Responsibilities," attesting to the fact that he had been trained regarding the company's new zero tolerance lock out policy and that he understood it. The company allowed the employees a thirty day grace period to become accustomed to the new policy. During this time, employees were not terminated for policy violations. Both black and white employees were disciplined for violating the new policy during this grace period. According to the plaintiff, one white employee and one black employee were suspended during the probationary period. The official policy took effect on September 3, 2004.

On April 27, 2005, the plaintiff locked down a machine that was not functioning properly and then took an injured temporary employee to the hospital. The plaintiff then ate lunch and was away from the facility for about an hour. During the plaintiff's absence, the lock had to be cut from the improperly functioning machine. When the plaintiff returned, he began making an adjustment to another machine which he refers to as a "hopper." This machine operates automatically by feeding fibers into a large opening to be processed into fabric with the use of revolving spikes. The company's safety director, Charles Wright, observed the plaintiff with his arms between the belts that power the machine. Wright further noticed that the plaintiff failed to

lock down the machine in violation of the company's no tolerance policy. The plaintiff admitted the violation but sought to excuse his conduct by claiming that one of his locks had been cut off another machine. He later asserted that he was unable to use his second padlock because he had loaned it to someone else several months previous, and that employee no longer worked for the company. The plaintiff acknowledged his awareness that loaning locks to other employees was against company policy.

Wright reported to the second shift plant superintendent, Ed Buggs, that he had witnessed the plaintiff's violation of the policy. Wright then informed the plaintiff that an investigation would be conducted and a determination made. Wright asked the plaintiff to leave the premises and to return the following day for a meeting regarding the incident.

The next day Wright, along with the plant's human resources manager, plant manager, and Buggs, met with the plaintiff and informed him that he would be suspended until the investigation was complete. The plant manager ultimately terminated the plaintiff's employment on April 29, 2005.

The plaintiff subsequently filed the present suit alleging that his employment was terminated, not because of his policy violation, but because of his race. The plaintiff also asserts a state law claim for malicious denial of unemployment benefits. He seeks reinstatement, compensatory and punitive damages, and attorneys' fees. The defendant has moved for summary judgment on all claims.

<u>Standard of Review</u>

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

3

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274 (quoting Fed. R. Civ. P. 56(c), 56(e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

## Analysis

Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, Title VII disparate-treatment claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The plaintiff in a Title VII action carries "the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas*, 411 U.S. at 802, 935 S. Ct. at 1824. The plaintiff must show by a preponderance of the evidence that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse

4

employment action; and (4) similarly situated employees outside the protected class were treated more favorably under nearly identical circumstances. *Earle v. Aramark Corp.*, No. 06-10483, 2007 WL 2683821, at *2 (5th Cir. Sept. 12, 2007); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003). The necessary elements of a prima facie case are not inflexible. Rather, they vary depending upon the facts of the particular case. *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633, 641 (5th Cir.1985).

If the plaintiff is able to establish a prima facie case, a presumption of discrimination arises, and the employer must proffer a legitimate, non-discriminatory reason for its actions or decisions. *McDonnell Douglas*, 411 U.S. at 802, 935 S. Ct. at 1824. If the employer is able to do so, the burden shifts back to the plaintiff, who must prove at "'a new level of specificity' that the reasons articulated by the employer are not true reasons but only pretexts." *Thornbrough*, 760 F.2d at 639 (5th Cir.1985) (quoting *United States Postal Service Bd. of Governors v. Aikens*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1093-94, 67 L. Ed. 2d 207 (1981)). "Although the *McDonnell Douglas* framework shifts the burden of production between the plaintiff and the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Pierce v. Texas Dept. of Transportation*, No. 3:01CV2098-AH, 2002 WL 31757635, at *3 (N.D. Tex. Dec. 4, 2002) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981)).

No direct evidence of discrimination is present in the case at bar. The plaintiff must, therefore, establish a prima facie case in accordance with the *McDonnell Douglas* framework. He asserts that he has done so. It is undisputed that the plaintiff is a member of a protected class

5

and that he experienced an adverse employment decision. Whether the two remaining elements have been satisfied is in dispute, however. The defendant argues that the plaintiff was no longer qualified for his position once he violated the company's zero tolerance policy and that he has made no showing that he was treated less favorably than employees outside of the protected class.

It is not genuinely contested that the plaintiff violated the company's zero tolerance lock out policy. Despite having testified explicitly that he violated the policy, the plaintiff now – in an apparent attempt to create questions of fact – contradicts his earlier statements. First, he asserts that the machine on which he was working – which he refers to as a "hopper" – is not listed in the lock out policy as a machine for which failure to lock out would result in mandatory termination. This is not a question of fact. The plaintiff is simply mistaken. The plaintiff testified that what he calls a "hopper" is actually a "bale breaker." The defendant's safety director, Charles Wright, explained that "bale breaker" is another term for "blender." Blenders are listed in the lock out policy. Second, the plaintiff asserts that he was not actually working on the machine but instead was only verbally instructing the machine operator as to how the repairs should be effected. This assertion is in direct conflict with the plaintiff's deposition testimony wherein he admits that he was working on the machine. Third, the plaintiff asserts that he instructed the other employee, Chris Gunn, to lock out the machine before Gunn began performing the maintenance. This statement ignores the plaintiff's testimony in which he admits that he violated the policy by failing to lock the machine and that this failure was due to the absence of his extra lock. The plaintiff clearly knew that he had violated the policy as evidenced by the following excerpt from his deposition testimony:

6

> Q. What did Mr. Wright say to you?
>
> A. Okay. When I came down and went over to start talking, we start talking about where the guy had gotten hung up in the machine, and then a little bit, I say about two minutes into our conversation, he asked me why I didn't have the machine locked out. I told him that I didn't have a lock because my lock was cut.
>
> * * *
>
> Q. Were you aware that this was a violation of the company policy?
>
> A. What? Up there?
>
> Q. Not having the machine locked down.
>
> A. Yes.

The defendant asserts that this admitted violation of the company's zero tolerance policy renders the plaintiff no longer qualified to work for the defendant. The court is unwilling to interpret the term "qualified" as strictly as the defendant, finding instead that within a Title VII context – at least at the prima facie stage – the defendant was generally qualified to hold the position. It is, however, clear that the plaintiff violated the zero tolerance policy and was subject to termination. This matter is more appropriately addressed during an examination of the defendant's proffered legitimate, non-discriminatory reason for the termination.

While the court does not adopt the defendant's reasoning as to the plaintiff's qualifications, the court does find the last element of the prima facie case lacking. The plaintiff has been unable to show that an employee outside the protected class was treated more favorably than the plaintiff under nearly identical circumstances. The Fifth Circuit has held that "to establish disparate treatment, a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which

the plaintiff was discharged was nearly identical to that engaged in by other employees." *Okoye v. Univ. of Texas Houston Health Science*; 245 F.3d 507, 514 (5th Cir. 2001). The plaintiff attempts to satisfy this element of the prima facie case by comparing his termination to an alleged incident involving a white supervisor, Ed Buggs. As the defendant notes, however, the two incidents are not comparable under the Fifth Circuit "nearly identical" standard. In the plaintiff's case, the plaintiff was terminated because the company's safety director, Charles Wright, personally witnessed the plaintiff working on a machine subject to the lock out policy without having locked out. The plaintiff subsequently admitted his violation of the policy. In Buggs' case, Wright received secondhand information shortly after the plaintiff's termination about an alleged violation of the lock out policy by Buggs. Two of the plaintiff's friends reported the incident more than a week after it allegedly occurred. No corroborating evidence was ever submitted. Wright investigated the matter and determined that the machine on which Buggs was allegedly working was not a "loom," as the plaintiff's two friends had alleged, but rather a "floor apron," which is not dangerous and does not fall within the lock out policy. As a result, Buggs suffered no adverse employment action.

The Fifth Circuit has made clear that the incidents being compared to show discrimination must be "nearly identical." In *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471 (5th Cir. 2005), the court reversed judgment for a Title VII plaintiff, finding that he failed to show that an employee outside the protected class had been treated more favorably under nearly identical circumstances. The plaintiff, a white cook at a catering company, was terminated after a police officer reported that he had confessed to stealing checks and cash from a party catered by his employer. *Bryant*, 413 F.3d at 474. The employee argued that a Hispanic employee had not

8

been terminated after allegations arose that she too had stolen from a company event. *Id.* at 478. The Fifth Circuit held that the two incidents were too dissimilar to show discrimination. *Id.* While the court found that a reasonable jury could conclude that the plaintiff and the Hispanic employee were "similarly situated" low level hourly employees, the Hispanic employee's alleged theft of alcohol and party decorations "is not the same as stealing money from a client's gift table at a catered event." *Id.* More significantly, the court held that, "since [the Hispanic employee] never admitted the theft to the police or anyone else, no reasonable jury could conclude that the two events are 'nearly identical.'" *Id.* at 478-79. This specific finding is especially analogous to the present case in which the plaintiff admitted his violation and the other employee never admitted any wrongdoing – nor was such wrongdoing ever determined to have taken place. In accordance with binding Fifth Circuit precedent, this court must find that the plaintiff has failed to establish a prima facie case of race discrimination under Title VII or § 1981.[1]

Due to the plaintiff's inability to set forth all four elements of a prima facie case, it is unnecessary for the court to examine the next step in the *McDonnell Douglas* process – the defendant's burden of proffering a legitimate, non-discriminatory reason for the termination. The court will, nevertheless, briefly address this matter. It is well-established at this point that the plaintiff violated the company's zero tolerance lock out policy; that he admitted the violation; and that he was terminated because of it. No direct or circumstantial evidence of race discrimination has been shown, and the court finds that no reasonable jury could determine that the defendant's reason for the plaintiff's termination was pretextual. Thus, even if the court were

---

[1]Title VII and § 1981 are analyzed under the Title VII evidentiary framework. *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000).

to find that the plaintiff had established a prima facie case, the defendant would still be entitled to judgment as a matter of law.

As noted above, the plaintiff also asserts a state law claim of malicious denial of unemployment benefits. Having determined that the plaintiff has no viable federal claim, the court declines to exercise jurisdiction over the plaintiff's state law claim and will dismiss it without prejudice.

<u>Conclusion</u>

For the foregoing reasons, the court finds that the plaintiff has failed to present a genuine issue of material fact as to his federal claims, and the defendant is entitled to summary judgment on those claims. The court will dismiss the plaintiff's state law claim without prejudice. A separate order in accord with this opinion shall issue this day.

This, the 26th day of September, 2007.

/s/ Neal Biggers
_____
**NEAL B. BIGGERS, JR.**
**SENIOR U.S. DISTRICT JUDGE**